Reese, J.
delivered the opinion of the court.
The Nashville Bank was incorporated in 1807. By that charter, the active corporate existence of the institution for ordinary banking purposes, was to close with the year 1818. By subsequent enactment its existence was prolonged for such purposes, for twenty years more, or until the close of the year 1838. No directors were elected after January, 1838, the president and directors in office supposing they had a right to hold over for the purpose of winding up the affairs of the Bank. The suit in this record was commenced, more than a year after the first day of January, 1838. Two general questions have been raised by the record, and discussed before us. 1st. Whether the powers and functions of the bank be extinct, that is, whether as a legal person the bank have any existence whatever, either actual or potential. And 2d. Whether it be dormant and incapable at present of maintaining this suit, or capable of maintaining it as brought in the name of the directors holding over. The counsel for the defendant maintains the *529 truth of one or the other of these two propositions. The counsel for the plaintiff denies both, and asserts that the corporation under the circumstances which have occurred, is legally capable of maintaining this action. We felt it tobe our duty early in the term to announce orally the conclusions at which we had arrived, with regard to the first point, which was, that the corporation is not extinct. We felt no difficulty in arriving at this conclusion, because the 3d section of the charter .of 1807, expressly provides, “that the powers and obligations of the corporation shall in all respects continue, for the purpose of bringing the affairs thereof, which shall be depending on the 1st day of January, 1838, to a final settlement and determination.” We had only to hold that the subsequent acts of extension, incorporated themselves with this act of 1807, and gave the same operation and effect to the above provision, with reference to the period of 1838, that it had when enacted with reference to that of-1818.
Of the propriety of such a construction, we could not upon familiar and well settled principles entertain the shadow of a doubt.
2. The counsel on both sides have, therefore, directed their at'tention to the second question, as to whether the corporation be dormant or whether notwithstanding the non-election of directors after January, 1838, the bank be now legally capable to maintain this action, and this question has been argued on both sides with ingenuity and force. And first, as to how the question is at common law, when the charter of incorporation is silent on the point.
The authorities which have been examined by us, as to cases in England and New York, are far from satisfactory. The cases are so blended with principles more immediately applicable to municipal corporations, and municipal officers, acting sometimes de facto and colore officii, that it is difficult to say on which side, the weight of opinion is to be found.
And although we incline to believe that the tendency of the cases is, in the absence of terms in a charter restricting or enlarging the powers of the corporation upon this point, to maintain the authority of the officers who hold over without an election, *530 still we cannot but feel after all, that the question, as chancellor Kent remarks, is not “definitely settled.” It becomes more important, therefore, for us to look into the statute, and see if we can find there any distinct purpose of the legislature on the subject. And waiving any reliance on the 20thfundemental article, which has been supposed to confer, on the directors in office at the termination of the year 1838, power and. duty of holding over, without any further election, for the purpose of closing and winding up the affairs of the association, we proceed to consider what is stated in the second article.
The charter appoints in that article, nine gentlemen, nomina-tim, as directors of the institution, who were to continue in office till the first Monday in January 1809. And then immediately after follows this provision: “The directors from and after that period, shall be elected for one year by the stockholders, for the time being-, at the place where the concerns or affairs of said bank are carried on, on the first Monday in January, in each and every year, during the continuance of the corporation. The directors chosen at such meetings, shall take their seats at the board, on the second Monday in January, in each and every year as aforesaid, and until the new directors take their seats, the former board and president shall continue to manage the affairs- of the company, in the same manner as before such election, so that no risk shall be run of the affairs of said company being- properly managed, until the new directors form a board, from and after the said first Monday in January in the year 1809.”
Here is a plain and explicit direction that an existing board of directors shall continue to sit, till a new board be organized and supersede them, and for an important reason, “that there may be no risk as to the affairs of the bank being properly managed.” The reason is a general one; it springs out of, and is intimately connected with general provisions covering the whole period of the corporation. But it is argued, that it is restricted by the concluding phrase, “from- and after the first Monday in January, 1809,” to mean the board appointed in the charter nominatim.
This is a very forced construction,, contradicting the gram *531 matical structure of the sentence, and of several other sentences, inconsistent with the object and purpose of the provision, and making the phrase predicable, not of what is found in the sentence or in preceding sentences, but of something very remote; moreover, the phrase itself, “from and after the first Monday in January, 1809,” is not restricting but amplifying in its own proper meaning, covering the whole period of the corporation, and intending to declare and-make certain the general nature and character of the provision. So then we have here the usual provision found in charters, that the old board shall continue to act, till superseded by anew one. And the effectof this provision is not weakened or destroyed by the subsequent declaration that a failure to elect directors on the 1st Monday in. January, shall not dissolve the corporation, but it shall be lawful to elect them at any time within ten days thereafter. To be sure the election for any one year, cannot take place, except on the first Monday in January or within ten days thereafter. But such omission to elect will not vacate the seats of the old board. They will .continue to sit, in order that there may be no risk that the affairs of the bank may not be properly conducted. This provision is proper, important and usual; and therefore ought to receive a favorable construction.
. Upon the whole, then, we are of opinion that the directors are in office for the purpose of maintaining this suit.